## Perkins v. Bridges.

(Decided April 22, 1932.)

FRANK R. GOAD, A. J. OLIVER and N. GOEBEL GOAD for appellant.

N. F. HARPER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Conceiving that Bridges held a piece of land under such circumstances as to create a trust in favor of Perkins, the latter sued Bridges for the land. He was unsuccessful, and has appealed.

On August 27, 1929, a tract of land in Allen county known as the "Woods-Hill-Ranch" had been cut into a number of tracts which were that day sold at auction. By the terms of this sale, the purchasers were required

to make substantial deposits when their bids were accepted, and within ten days to pay enough more to make 25 per cent. of the purchase price, and then to accept deeds for the land and to execute 5 notes, each of which was to represent 15 per cent. of the purchase price; such notes to be due in 1, 2, 3, 4, and 5 years from that date, to bear interest, and to be conditioned that, upon default in the payment of either the principal or the interest of any note, the holders of the notes should have the right to declare the entire debt due, and to proceed to enforce the lien retained on the land to secure it.

Perkins desired to purchase one of these tracts, and in preparation therefor he borrowed from Bridges $300, giving Bridges a note with personal surety thereon. At the sale, Perkins was the accepted bidder for one of these tracts at the price of $1,588.88. He paid down the $300 he had borrowed, and began to make efforts to raise the remaining $97.20 which he would have to have to make up the 25 per cent. of the purchase price, which he would be required to pay before the deed was made. He was not able to get this money, and, as the date when he would have to pay had just about arrived and he feared he would lose the $300 he had deposited, he proposed to Bridges that the latter should step into his shoes, should take the land, pay this $97.20, and take over the bid that had been made by Perkins; and on September 21, 1929, Bridges paid this $97.20, executed his 5 notes of $238.32 each, and the land was conveyed to Bridges. Bridges says that he then surrendered to Perkins his $300 note, but Perkins denies this, and says that Bridges agreed to pay this $97.20 and to give him until the first of the year 1930 in which to repay him this $397.20, and that upon the repayment of it Bridges was to convey the land to Perkins. About Christmas 1929, Perkins offered to repay Bridges this $397.20, and demanded that Bridges convey him the land. Bridges refused to do so, whereupon Perkins sued him and asked the court to compel Bridges to convey him the land. Perkins is not in a very good position to ask for this conveyance because while he did offer to repay the $397.20 he didn't offer in any way to relieve Bridges of his obligation to pay these 5 notes of $238.32 each; but passing that, the evidence produced by Perkins to establish that Bridges had purchased and was holding this land in trust for Perkins is

not of that clear and convincing nature which the law requires for the establishment of such a trust. Of course Perkins testified in support of his claim, so did Tom Fisher, to whom Perkins had contracted to sell the property, and so did Charley Fisher, the father of Tom, and Sellus Hurt, to whom Tom had contracted to sell the property; also his claim is supported by the testimony of Raymond Perkins, his son, and that of G. C. Woods, his brother-in-law. Ed Elmore and Late Steenbergen also testified for him, and these two seem to have had no interest in the matter. He also had the evidence of L. G. Whitney, but Mr. Whitney testified to nothing more than Bridges refused to convey the land to Perkins.

On the other hand, Bridges testified that he took an assignment of Perkins' bid without qualifications, and he testifies to things said and done by Perkins that are utterly inconsistent with the claim the latter is making. He also produces six disinterested witnesses who testify to things said and done by Perkins that are in conflict with the position he is taking now.

The chancellor refused to require Bridges to make this conveyance, and, in view of the evidence, we are not convinced that the chancellor erred.

The judgment is affirmed.